BENJAMIN L. LOMBARD *versus* EZRA FISKE & *al.*

Where the defendants, by a contract in writing, undertook "to clear him (the plaintiff) from all liabilities, tax, or assessment, that have or may arise, from his one share in the Scythe Factory," the name used by a company of unincorporated individuals who had associated to carry on the manufacture of scythes, of whom the plaintiff was a member, *it was held*, that the meaning was, that the defendants would indemnify the plaintiff for whatever of damage he might unavoidably sustain from his liabilities, that were strictly legal; and that if the plaintiff should be compelled to pay company debts, he should first seek his remedy over against his associates for all, except his share, and for the whole, if there was company property sufficient for the purpose.

And where a creditor of the company had obtained judgment against the individuals composing it, including the plaintiff and principal defendant, and had taken out execution, and the judgment debtors had been arrested thereon, and had severally given bonds; and afterwards one of the number agreed with the creditor to pay him the amount, and take an assignment of the judgment and bonds for his own benefit, to a third person, and the money was paid and the assignment was executed; and then a suit was brought, in the name of the creditor, against the plaintiff on his bond, and judgment was rendered by default for debt and costs, including the extra interest, given against the principal in such bonds by the statute, without notice given by him to the defendants, and the same was paid by the plaintiff; *it was held*, that even if the payment by one of the judgment debtors on the assignment to a third person, was not a payment and discharge of the judgment and bonds, the plaintiff was not entitled to recover of the defendants the extra interest so paid.

THIS is an action upon the following obligation. " Know all men by these presents, that I, Allen Fiske of Wayne, County

of Kennebec, State of Maine, as principal, and Ezra Fiske and Moses Hubbard, do covenant and bind ourselves in the sum of three hundred dollars to B. L. Lombard of said Wayne, to clear him from all liabilities, tax or assessment, that have or may arise from said Lombard's one share in the Scythe Factory in said Wayne. Given under our hands this 20th day of July, A. D. 1839." Signed by the above named E. and A. Fiske and Hubbard. The plaintiff proved, that at the time of the execution of said obligation he assigned, as the consideration therefor, his share in said factory as aforesaid, to Allen Fiske. It appeared in evidence that there was a voluntary association by articles of agreement, called the Wayne Scythe Manufacturing Company, with a capital stock of $4,000, divided into 40 shares of $100, each; that the said company, prior to the said assignment of the plaintiff's share, became indebted to Jonathan Hyde & Son, for articles procured of them for the use of the company; that the said Hydes caused their said demands to be sued against ten persons, as members of said company, among whom were Allen Fiske, Francis N. Fiske, Moses Hubbard, Asa Gile, and the plaintiff, and recovered judgment against them at the Middle District Court, in said county, Dec. Term, 1840, for the sum of $351,06, debt, and $19,98, costs; that execution on said judgment was duly issued and committed to an officer for service; that said officer arrested the plaintiff and all the other judgment debtors, save one, on said execution, and they severally gave a bond to the creditors, conditioned within six months to pay the debt, &c. agreeably to law in such cases; that prior to Nov. 23, 1841, $220, had been paid on said judgment and execution; and at that time a balance of $191,85 only was due thereon. The bonds aforesaid had all been forfeited before the 23d of Nov. aforesaid; that an action in the name of said Hydes was brought Feb. 25, 1842, against the said plaintiff and sureties, and four others and sureties, on the bonds by them respectively given upon their arrest, and judgment rendered in the action against the plaintiff and sureties upon defaults at said District Court, April Term, 1842, for the sum of $413,73, debt, and $9,32,

costs; that two executions were issued upon said judgment, one for the sum of $413,73, debt, and $9,32, costs, and the other for the sum of $60,23, extra interest upon said bond; that May 24, 1842, the plaintiff paid $165; Aug. 31st, 1842, $57,47, and on the same day, $54,20, on the execution for extra interest. The writ in this case bears date May 5, 1842.

The defendants introduced S. P. Benson, Esq. who testified that he was attorney for the said Hydes to collect their aforesaid demand against said Company; that the said Fiskes and Asa Gile had been at his office to obtain respectively an assignment of the judgment and execution aforesaid in favor of said Hydes against said Fiskes, Gile and others, and he declined acting in the matter without direction from the judgment creditors; that said Asa Gile, on the 29th of Nov. 1841, brought to him a line from the Messrs. Hydes, authorizing him upon the payment of the balance of said judgment and execution against said Gile and others, to assign said judgment and execution to said Gile, or some person for Gile's benefit; that on the said 23d day of Nov. the said Gile paid said Benson $110 in cash, and gave his note for $81,86, to be paid in a few days, which was paid first week of the Dec. District Court, being balance of said judgment and execution, and the full amount of the said Hydes' debt and costs; and that he, said Benson, in pursuance of authority brought by said Gile from the said Hydes, and upon the payment of said execution by said Gile, made an assignment of said judgment and execution to one E. E. Tuttle for the benefit of said Gile, leaving the execution undischarged for the balance aforesaid. The said Benson further testified, that in consequence of the following ·communication from the Messrs. Hydes, viz. "Bath, Jan. 19, 1842. S. P. Benson, Esq. Dear Sir, The bearer, Mr. Gile, has called on us to get our consent for you to assign to him, or some of his friends, certain bonds created by a suit of ours against the Wayne Scythe Company. In yours to us of Dec. 11, you say you have assigned to E. E. Tuttle the execution for the benefit of Asa Gile, and if you think proper you may

assign the bonds to the same person, provided it can be done in a way that we shall have no further trouble in the affair. Please understand we have no particular wish in the affair, and leave it entirely with you. Jonathan Hyde & Son;" and that he, on the 8th day of Feb. 1842, assigned the aforesaid bonds to said E. E. Tuttle.

Upon the foregoing proof, the counsel for the defendants contended, that the action could not be maintained; that the payment of the balance of the execution to Benson by Asa Gile, one of the judgment debtors, was a satisfaction and discharge of said judgment and execution; that the assignment of the judgment and execution to E. E. Tuttle for the benefit of Gile was inoperative and void, and also the assignment of the plaintiff's bond was void; that no action could be sustained on that bond against the plaintiff and his sureties; that the payment made by the plaintiff on the execution which arose from the bond, was made in his own wrong; that he was not bound to make it; that it was not one of the liabilities referred to in the obligation declared on; that nothing was paid by the plaintiff till after this suit; and that if this action could be maintained, that the plaintiff would not be entitled to recover for the extra interest, nor any thing more than one fortieth of the debt and cost recovered by the said Hydes in the original action against the company, or at most, one tenth of the original claim, being debt and costs of the said Hydes against the defendants in the original action.

SHEPLEY J. the presiding Judge, instructed the jury, that the money paid by Gile to Mr. Benson was to be regarded as payment of the execution, and that the plaintiff would not be entitled to recover, unless they should be satisfied that it was paid in pursuance of an agreement before made to have the execution assigned to Edwin E. Tuttle, and to accomplish that object; and that it was so assigned; and that in such case, it would not operate as a payment, although the execution was assigned to Tuttle for the benefit of Gile, and the plaintiff might recover; and that he would in such case be entitled to

recover the amount which he had been compelled to pay by virtue of the judgment recovered against him on his bond.

The verdict was for the plaintiff, and the defendants excepted to the instruction of the presiding Judge.

*Emmons*, in his argument for the defendants, in support of his proposition, that the payment by Gile, one of the judgment debtors, to the attorney of the creditors, was a full discharge and ·satisfaction of the judgment and execution, and that of course, the bond given by Gile and others to discharge them from arrest on the same execution thereby became void, cited *Hammatt* v. *Wyman*, 9 Mass. R. 138 ; *Brackett* v. *Winslow*, 17 Mass. R. 153 ; *Stevens* v. *Morse*, 7 Greenl. 36.

That the legal effect of the assignment of the claim of Hyde & Son against Gile and others to a friend of his for his benefit, was the same as if assigned directly to him. 2 Story's Eq. § 1201 ;. Law Lib. of March, 1843, 148. The prior agreement to have the assignment made to a friend, could not prevent the legal effect of the payment by Gile, who made the agreement, furnished the money, and was to have the benefit of the assignment.

In the construction of the obligation, the words are to be taken in a constricted sense. *Sumner* v. *Williams*, 8 Mass. R. 162.

*H. W. Paine* and *L. M.* ·*Morrill*, for the plaintiff, contended, that as the payment to the attorney of Hyde & Son was not to· be, nor to be considered, as a payment of the debt, but merely as the consideration for the assignment, neither that, nor the assignment, was a discharge of the debt. *Allen* v. *Holden*, 9 Mass. R. 133 ; *Norton* v. *Soule*, 2 Greenl. 341 ; *Stevens* v. *Morse*, 7 Greenl. 36 ; *Herrick* v. *Bean*, 20 Maine R. 51.

If then the assignment was valid, the rule for assessing damages was right. The only fair construction to be put on the contract, whether we look at the letter or the spirit of it, is, that the defendants were fully and entirely to indemnify the plaintiff from all claims against him, as a member of the Scythe

Factory Company. Fiske purchased the plaintiff's interest in that company, and was in all respects to have his rights, and incur his liabilities. Fiske agreed to take the place of the plaintiff, and free him from all liabilities as member of that company. 20 Pick. 474.

The opinion of the Court, SHEPLEY J. dissenting therefrom, was drawn up by

WHITMAN C. J. — This action is founded upon a written contract between the parties in which the defendants undertake "to clear him (the plaintiff) from all liabilities, tax or assessment, that have or may arise from said Lombard's one share in the Scythe Factory." This was the name used by a company of unincorporated individuals, who had associated to carry on the manufacture of scythes, of whom the plaintiff was one. A correct interpretation of this contract becomes essential in order to understand the ground of the exceptions taken at the trial to the instruction of the Court to the jury.

The meaning would seem to be that the defendants would indemnify him for whatever of damage he might unavoidably sustain from his liabilites. Good faith was to be expected on his part; and that he would not wantonly allow himself to be subjected to greater damage therefrom, than might be unavoidable. The parties must have had in view liabilities that were strictly legal. If compelled to pay company debts, when he could have ample remedy over against his associates for all, except his share of them, or for the whole, in case of there being company property sufficient for the purpose, it would have been reasonable, and could hardly be deemed otherwise than that the understanding of the parties, was that he should seek his remedy from such source. It should be observed, that it is at least doubtful, if the defendants, by virtue of their contract with the plaintiff, could have had recourse to the company for any thing they might pay for the plaintiff. No privity of contract as to such payment would have existed between them. Any such payment by the defendants would have been, as it respected the company, a mere voluntary act. It would not

have been made as a member of the company. It surely could not be admissible for the plaintiff to pay all the company debts, and then turn round, by virtue of his contract with the defendants, and call upon them for the amount so paid, without an effort first made to recover the same of his associates. If the defendants were to reimburse him for such losses as were inevitable, it would seem that the terms of their contract, according to their true import, and according to what must have been the understanding of the parties, would be fulfilled.

How was the case here? The company were liable to Messrs. Hyde & Co. for a debt of something short of $400, for which judgment had been recovered; on which execution issued, and, before the 23d of Nov. 1841, had been satisfied in part, leaving due on it only $191,85. Gile, one of the debtors in the execution, afterwards paid the balance due on it; and procured an assignment of it, as if unsatisfied in any part, to a confidential friend of his, and also of the bonds, which had been given by each of his associates, that of the plaintiff's being one of them, which had been given upon the arrest of each on the execution; and subsequently, in the name of Hyde & Co. caused suits to be instituted against several of them; and against the plaintiff among the rest, who suffered judgment thereon to be entered against himself, upon default, for the full amount due on the execution, as if no payments had been made on it; together with $54,20, for extra interest, as provided by law against the principals in such bonds, and actually paid for the benefit of his associate, Gile, this extra interest; and two hundred and twenty-two dollars of the principal; and all this, so far as appears, without notifying the defendants of the existence of any such claim; and now calls upon the defendants, under the contract with them, for reimbursement of the whole amount so by him paid; and a verdict has been returned therefor in his favor.

It was objected at the trial, that, when Gile, he being one of the debtors, paid the balance due on the execution, it was satisfied; and that an assignment thereof to his friend, by the name of Tuttle, was nugatory; and that no action could there-

after be legally maintained upon the plaintiff's bond, given on arrest, on the execution, of himself, and the other associates. And at any rate, that nothing could be recovered for the extra interest paid by him in that case. The Court, however, ruled at the trial, and so instructed the jury, that if Gile paid the balance due on the execution, in pursuance of an agreement before made, to have the execution assigned to Tuttle; and to accomplish that object, it was so assigned, although for the benefit of Gile, that the plaintiff might recover the amount, which he had been compelled to pay by virtue of the judgment recovered against him on his bond. The jury found for the plaintiff, it may be presumed, as exceptions are filed by the defendant; and to the full amount claimed.

The question is, was the instruction such as ought to have been given? Was the assignment by Hyde & Co. of the execution and bonds, under the circumstances attending it, to Tuttle, for the benefit of Gile, of any validity? or, in other words; did not the payment by Gile, of the amount due, he being one of the debtors, render both *functus officio?* How does it vary the case that it was made nominally to his confidential friend, at his request, and solely for his benefit? The law should not regard mere shadowy forms in the transaction of business; it should look to the substance of things. Gile, the debtor, paid the full amount due; and was liable for that amount. The creditors were completely satisfied. Could the execution and bonds afterwards be deemed in force in the hands of any one?

It would seem difficult to believe, that this recovery against the present plaintiff, could have been had without collusion between him and Gile. Gile in his own name, could have recovered of him not exceeding one tenth part of the amount due and paid by him, there having been ten debtors, against whom the execution issued; yet he seems voluntarily to have paid the whole; for he made not the slightest resistance to prevent the recovery of it of himself.

But clearly the exceptions must be sustained, and a new trial be granted in reference to the extra interest, a liability for

which, was voluntarily incurred by the plaintiff. The plaintiff had been sued by Hyde & Co.; had suffered judgment to go against him by default, and execution to issue; and had given a bond in the usual form; and incurred a breach of its condition, without, so far as appears, calling upon or notifying the defendants of any such accruing liability. Surely they ought to have been apprised of these proceedings, if they were to be rendered responsible for the whole amount ultimately to be recovered. They should at least have been allowed an opportunity to take all needful measures in defence.

*Exceptions sustained;*

*new trial granted.*

The following dissenting opinion was delivered by

SHEPLEY J. — Certain persons associated under the name of the Wayne Scythe Manufacturing Company, became indebted to Messrs. Jonathan Hyde & Son, who brought a suit against them, and recovered judgment against the plaintiff, the defendants, Asa Gile, and several others. Upon an execution issued thereon, the judgment debtors, with the exception of one, were arrested and gave bonds according to the provisions of the statute. These bonds were forfeited; and the judgment had been partly paid, when Gile, one of the judgment debtors, applied to the judgment creditors to obtain an assignment of the judgment and execution to him or to some person for his benefit. To this they assented, and in writing gave their attorney authority to make such an assignment upon payment of the amount due to them. Gile, in accordance with this arrangement, paid and secured to their attorney that amount, and took an assignment in writing of the judgment and execution to Edwin E. Tuttle for his own benefit. There can be no doubt, that it was the intention of all parties to make a sale and purchase of the judgment, and an assignment and not a payment of it; and that intention should be carried into effect, if it be competent for a judgment debtor to make a purchase of a judgment against himself and others. May not one of several makers of a negotiable promissory note, or bill of ex-

change, before it becomes due, lawfully purchase and make sale of it? What legal principle is violated by it? It is not perceived, that there could be any legal objection to one of several makers becoming the equitable owner by purchase of a promissory note not negotiable. There might be some difficulty in the complex transactions of business in determining, whether the note was paid or purchased; but it would have reference to the fact and not to the law of the case. Such a purchase would not deprive the other parties to the paper of any legal right. Their rights upon a payment of the whole, or more than their proportion, would remain unaltered. And the original holder might, as well as the purchaser, compel any one of the makers to pay the whole. The form in which the debt may exist would not seem to make any difference respecting the right of purchase and sale. The collection of a judgment assigned must be enforced in the name of the creditor, who might, without an assignment or sale, agree with one of the judgment debtors to collect it partly or wholly of one or more of the debtors, according to the pleasure of that one. By making an assignment to him he would but enable him to accomplish the same purpose. The jury have found under instructions sufficiently favorable, on this point at least, to the defendants and upon testimony fully authorizing them, that the money was paid in pursuance of an agreement for an assignment of the judgment, and not in payment of it, and that it was assigned accordingly. The decision in the case of *Dunn* v. *Snell*, 15 Mass. R. 481, sanctioned an assignment by a verbal agreement to an officer, who, having neglected his duty, paid the debt to the creditor to obtain the benefit of the execution. The cases of *Hammatt* v. *Wyman*, 9 Mass. R. 138; and *Brackett* v. *Winslow*, 17 Mass. R. 153, were cases of payment by one of the judgment debtors without any sale or assignment by the judgment creditor as the consideration for the payment. That of *Stevens* v. *Morse*, 7 Greenl. 36, was of a like character, except that the payment was made by a third person, out of what was regarded as the property of one of the debtors. And there is a strong implication in the

reasoning of the opinion, that an assignment by the creditor would have been considered as good. If an assignment to a judgment debtor could not have been good, it would seem to have been unnecessary in all these cases to have labored to prove the transactions, constituted a payment, and not an assignment. In the case of *Nickerson* v. *Whittier,* 20 Maine R. 223, a surety was permitted by an agreement to acquire the beneficial interest in a judgment against himself and the principal.

The *transfusio unius creditoris in alium* of the civil law is usually denominated subrogation. When the relation of debtor and creditor subsists between two persons only, and the debtor pays with his own money, the claim is extinguished. When a third person pays the debt, he is entitled to be subrogated to the rights of the creditor. Inst. Just. c. 3, tit. 29; Dig. c. 36, 39. When the debt was due from several persons, their rights in this respect were regulated by the civil code of France, which declared, that a joint debt due from several debtors would not be necessarily extinguished by a payment made by one of them from his own funds, but that he would be entitled to a subrogation of the rights of the creditor. Code civil, liv. 3, tit. 3, § 11, art. 1250, 1251. When one of several joint debtors stipulates before payment for a cession of the rights of the creditor to a third person for his benefit, he does but effect by agreement, what by the French law he would obtain without it in a more direct form to himself. The other debtors are not injured by such an arrangement; and there can be no technical difficulties in the common law to prevent its being effectual; for in such case the rights of the creditor and debtor do not become united in the same person.

The other point presented by the exceptions arises out of the instructions respecting the amount, which the plaintiff might be entitled to recover. He owned only one out of forty shares, into which the capital of the associates was divided, when the debt due to the Messrs. Hydes was contracted; and there were then ten associates. It is contended, that the plaintiff is entitled to recover of the defendants only one

fortieth, or at most, one tenth part of what he was obliged to pay on account of the neglect to pay the debt. And that he must look to his associates for the remainder. After the debt was contracted the plaintiff sold his share to one of the defendants, or rather appears to have transferred it to him for the purpose of obtaining an indemnity against all liabilities on account of it; and received therefor an obligation in the following words: — " Know all men by these presents, that I, Allen Fiske of Wayne, County of Kennebec, State of Maine, as principal, and Ezra Fiske and Moses Hubbard, do covenant and bind ourselves in the sum of three hundred dollars to B. L. Lombard of said Wayne, to clear him from all liabilities, tax, or assessment, that have or may arise from said Lombard's one share in the scythe factory in said Wayne. Given under our hands this 20th July, A. D. 1839." If it should be considered to be the intention of the parties to relieve the plaintiff only from the payment of any tax or assessment, which must be made equally upon all the shares, the word "liabilities" would have no effect or influence upon the contract, which also contemplated a relief from past as well as future liabilities by the use of the words, " that have or may arise." The language of the contract is not only sufficiently comprehensive to include all liabilities, to which the plaintiff might in any legal manner be subjected by reason of his having been the owner of that one share, but effect cannot be given to the whole of it by a more restricted construction. The intention appears to have been, that Fiske should assume the position and rights of the plaintiff, and be subjected to all his liabilities, as one of the associates ; and that the plaintiff should be free from them. As one of the associates, the plaintiff might be compelled to pay all their debts, and to look to them for repayment. And this would seem to furnish sufficient cause to induce him to surrender the share to be relieved from that responsibility. If he obtained an indemnity for only one fortieth part of the risk, the object would be greatly defeated; and the purchaser would pay nothing for it but its equal share of all assessments. There does not appear to be any ground,

on which the position can be sustained, that the design was to indemnify the plaintiff against one tenth only of any payments, to which he might be subjected.

Ten persons appear to have become associates in business under a company name. The capital or stock was divided into shares, and was held by them in unequal proportions. By the terms of their association any one might sell his share and retire from the association, and the purchaser, if not already a member, might be admitted with all the rights and subject equitably, as between the associates, to all the liabilites of the retiring member. Without any stipulation therefore between the seller and the purchaser it would be the duty of the purchaser and his associates to apply the capital to the payment of all preexisting debts. This contract, therefore, does no more than to compel the performance of that duty, if there was sufficient capital, and to save the seller from harm by reason of his liability to the creditors of the company. If there was not sufficient capital to pay the debts, it would require the purchaser to become responsible for them, and to relieve the seller from being injured by his liability to pay them. With what justice or propriety then can the purchaser in this case, who was already a member of the association and liable as such, insist, that the seller should pay the whole debt, and then only call upon him to pay simply the amount, which the holder of one share ought to pay? And do this, when his own contract with the plaintiff declares, that he shall clear him from liabilities, that have or may arise from that share? And with what justice does he complain of the amount recovered against him, when by his neglect and by a violation of his contract he allows a suit to be brought against the plaintiff, and his body to be arrested on an execution issued on the judgment recovered in that suit, and leaves him to relieve himself from actual imprisonment by procuring a statute bond, and then on its forfeiture to pay the money due, to discharge the debt and costs, to save his own property and that of his sureties from being sold on execution? The plaintiff claims to recover only the amount, which he was legally obliged to pay without any

Lombard *v.* Fiske.

compensation for the trouble and vexation occasioned by an arrest. And the purchaser now insists, that the plaintiff should collect of each other member of the association, his just proportion of that debt, before he can resort to him on his contract of indemnity. But this association is but a partnership, and if the plaintiff is to be considered as yet a partner as between themselves, so far as respects transactions occurring before his sale, he can maintain no suit against each copartner for his proportion of a debt due from the partnership; nor any suit against the partnership, until the partnership concerns have been adjusted. If on a sale of his stock or share, he ceased to be a partner by the consent of his former associates, then, by a payment of a partnership debt for the benefit of the association, he could maintain a suit against all the members of the association to recover from them the money so paid for their use. And could recover the amount now claimed of those defendants, who were members of the association, if he had not taken a contract of indemnity. But to turn the plaintiff *over to such* remedy is to deprive him of all substantial benefit from his contract. It is said, that the defendants, if the plaintiff should collect the amount of them, could not obtain their indemnity from the association. Two of them are sureties for the other, and like other sureties their claim will be upon their principal; who was a member of the company, and as such will have all the same rights and remedies, which he would have had, if he had, as a member of the company, paid the debt to Hyde & Son, without entering into this contract with the plaintiff; that is, the full rights of a partner, who has paid the debt of the firm. Complaint has been made, that the plaintiff suffered a default to be entered in the suit upon his bond and a judgment to be entered up for interest on the debt at the rate of twenty-four per cent. without notice to the defendants. It appears, that the principal defendant was a debtor in the same execution, on which the plaintiff was arrested, and that he also was arrested and gave a poor debtor's bond. The return of the officer on that execution was open to inspection. If that defendant had paid the debt, the plain-

tiff would have been relieved from the performance of the condition of his bond. It will therefore be perceived, that the principal defendant must have been discharged by taking the poor debtor's oath, or must have forfeited his own bond. These proceedings cannot be supposed to have taken place without his becoming fully informed, what proceedings had taken place in respect to his joint debtor, whom he had engaged " to clear from all liabilities." It is not perceived, that there can be any other foundation for the suggestion of collusion between the plaintiff and Gile, than the suffering a default and judgment to be entered as before stated; and it does not appear, that the plaintiff could have made any legal defence in that suit. And he might reasonably expect that judgment would be legally made up by the Court, or its officers, for the amount due, as that amount was disclosed by the papers in the case. And the payment on the execution appears to have been made on it after he had been arrested and not by himself; and he being no longer interested in the company could not be expected to be informed of payments made by it. Under such circumstances the rights of the plaintiff cannot be justly affected by such a suggestion without some direct proof of it. The interest at the rate of twenty-four per cent. was a penalty imposed by law, from which the plaintiff could not escape without a performance of his bond. From that and all other trouble arising from the company debts, it was the duty of the principal defendant to have relieved him; and it ill becomes him to blame the plaintiff for consequences resulting from his own neglect and breach of contract.